UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K. C., et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>          Defendants. | Case No. 22-cv-01817-DMR<br><br>**ORDER RE: MOTION TO COMPEL, SEALING MOTION**<br><br>Re: Dkt. Nos. 124, 125 |

        Plaintiffs K.C. and Terri Williams Park filed this motion to compel discovery against Defendant Wellpath LLC ("Wellpath"), the contractor that provides medical services at the Santa Rita Jail ("SRJ") for co-Defendant Alameda County. This civil rights case involves the suicide of Jonas Alexander Park on February 9, 2021 while he was incarcerated at SRJ. [Docket No. 125 (Mot.) 1.] Plaintiffs seek Part III of Wellpath's Mortality and Morbidity Report and Review ("Part III"), a document generated after each death at SRJ. Part III is also referred to as the "Form 01c Report and Recommendations" in the Wellpath written policy covering facilities in Alameda County. Mot. 2; [Docket No. 126-6 (Wellpath Policy) 7.]

        Wellpath contends that Part III is privileged and protected under the Patient Safety and Quality Improvement Act ("PSQIA"), 42 U.S.C. § 299b-21, et seq. [Docket No. 133 (Opp'n).] Plaintiffs argue that Part III is not privileged because it is a "dual-purpose" document and therefore falls outside the PSQIA privilege. Mot. 2. Plaintiffs move to compel the Part III documents for Park's 2021 suicide as well as for seven other suicides that occurred at SRJ around the same time period: Christian Madrigal, Raymond Christopher Reyes, Jr., Christopher Crosby, Vinetta Martin, Marlon Reyes, Nelson Chia, and Stephen Lofton. Mot. 2; [Docket No. 125-2 (Second Set of RFPs)].

## I.   THE PATIENT SAFETY AND QUALITY IMPROVEMENT ACT

The PSQIA is a federal law that establishes a privilege for "patient safety work product" ("PSWP").  42 U.S.C. § 299b-22(a).  There are three separate ways information can become protected PSWP: "(1) The information is prepared by a provider for reporting to a PSO[1] and it is reported to the PSO, (2) the information is developed by a PSO for the conduct of patient safety activities, or (3) the information identifies or constitutes the deliberations or analysis of, or identifies the fact or reporting pursuant to, a patient safety evaluation system (PSES)[2]."  Patient Safety and Quality Improvement Act of 2005—HHS Guidance Regarding Patient Safety Work Product and Providers' External Obligations ("HHS Guidance"), 81 FR 32655-01.  The goal of the PSQIA is to establish a voluntary reporting system in which PSOs aggregate and analyze information from providers about patient safety, health care quality, and health care outcomes, and then give feedback to the providers to improve patient safety and reduce medical errors.  *Id.*  The broad privilege and confidentiality protections under the PSQIA alleviates concerns about such information being used against a provider, such as in litigation.  *Id.*

There is a caveat.  PSWP "does not include information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system. Such separate information or a copy thereof reported to a patient safety organization shall not by reason of its reporting be considered patient safety work product."  42 U.S.C. § 299b-21(7)(B)(ii).  Reports created for external obligations, such as mandatory requirements placed upon providers by state health regulatory agencies, are not privileged, even if the reports are also shared to a PSO.  HHS Guidance, 81 FR 32655-01.  Such "dual purpose" records are not PSWP.  *See Est. of Hultman v. Cnty. of Ventura*, No. CV2106280DSFRAOX, 2022 WL 2101723 (C.D. Cal. May 16, 2022).

The party asserting a privilege bears the burden of proving that the information sought is indeed privileged.  *Hickman v. Taylor*, 329 U.S. 495, 512 (1947).  Here, Wellpath bears the

---

[1] A patient safety organization ("PSO") is defined as "a private or public entity or component thereof" that is listed by the Secretary of Health and Human Services as a qualifying entity.  42 U.S.C. § 299b-21(4).

[2] A patient safety evaluation system ("PSES") is defined as "the collection, management, or analysis of information for reporting to or by a patient safety organization."  42 U.S.C. § 299b-21(6).

burden of establishing that the requested Part IIIs fall within the PSQIA privilege. *See Doe v. Pasadena Hosp. Ass'n, Ltd.*, No. 218CV08710ODWMAA, 2021 WL 4557221, at *18 (C.D. Cal. June 7, 2021).

## II.  FACTUAL BACKGROUND

Wellpath is an active participant in a PSES and reports to a PSO, the Center for Patient Safety. Opp'n 6. Wellpath's policies set forth site-specific Alameda County procedures following an in-custody death. That process includes both an "Administrative Mortality Review," which assesses correctional and emergency responses surrounding the death and is conducted in conjunction with custody staff, and a "Clinical Mortality Review," which examines the clinical care provided and the circumstances leading up to a death. Wellpath Policy 2. According to the policy, Part III of the Mortality and Morbidity Report and Review (also called "Form 01c Report and Recommendations") is referenced in both the administrative and the clinical reviews. *Id.* at 4, 6. As part of the Clinical Mortality Review, a Wellpath employee called the responsible health authority or health services administrator (RHA) completes a draft Part III and submits it to the Wellpath Corporate Office. *Id.* at 4. As part of the Administrative Mortality Review, the RHA then holds a meeting with Wellpath employees and a representative of Wellpath's client (in this case Alameda County), "reviewing the areas on Form 01c Report and Recommendations and any other relevant factors to the specific event." *Id.* at 6, 8 (italics omitted).

Plaintiffs point to the Wellpath Policy as evidence that Part III is not privileged because it is a dual-purpose document, shared externally to an Alameda County representative for purposes other than reporting to a PSO. In opposition, Wellpath offers a sworn affidavit from Elizabeth Samson, the Director of CQI and Quality Innovations at Wellpath. [Docket No. 133-1 (Elizabeth Samson Decl., February 13, 2024).] The declaration states that following Park's death, Park's Part III was "assembled or developed by Wellpath with the exclusive intent" to report to a PSO. *Id.* at ¶ 9. Samson further states that Part IIIs are "not created for use at the Administrative Review, and in fact are not used or disclosed at Administrative Reviews, and there is nothing in the Wellpath policy that requires disclosure of Part IIIs at Administrative Reviews. . . . Part III of the [Morbidity Report] was <u>not</u> shared, and not [sic] was not required to be shared with Alameda County,

3

verbally or otherwise, or with any other external entity." *Id.* at ¶¶ 9, 12. With respect to the Part IIIs created after the other suicides at SRJ at issue in this motion, Samson states that they were "neither created nor used to fulfill any external reporting (including any state or federal agency)," and were never provided to "any external person or entity" other than the PSO. *Id.* at ¶ 20.

Plaintiffs objected to Samson's affidavit as lacking personal knowledge. [Docket No. 134 (Reply) 2-3.] On March 14, 2024, the court held a hearing on the motion to compel and granted Plaintiffs leave to take a two-hour deposition of Samson on the topics covered in her declaration to further develop the evidentiary record. [Docket No. 138 (Minute Order).] Samson's deposition took place on April 15, 2024. [Docket No. 142-1 (Elizabeth Samson Dep., April 15, 2024).] Following the deposition, Plaintiffs filed a supplemental brief reasserting their objections to the declaration and raising further evidentiary objections to Samson's statements in the deposition. [Docket No. 141 (Plfs. Supp.).] Wellpath opposes. [Docket No. 143 (Defs. Supp.).]

### III. MOTION TO SEAL

On January 18, 2024, Plaintiffs filed an administrative motion to consider whether another party's material should be sealed regarding Wellpath's Alameda County policy. [Docket No. 124.] Pursuant to Civil Local Rule 79-5(f), Wellpath was required to file a statement or declaration within seven days of the motion's filing to establish that the document is sealable. Civ. L.R. 79-5(f)(3). Wellpath did not do so until February 26, 2024. [Docket No. 135.] In its belated statement, Wellpath argues that it has a legitimate interest in sealing the Wellpath Policy because it "falls squarely within the rationale of" the PSQIA. *Id.* Wellpath asserts that the policy "is designed to promote candor in limiting patient fatalities," and that if it is disclosed, it could "weaken the willingness of Wellpath personnel to candidly assess any internal shortcomings following a patient's death." *Id.* Wellpath also argues that the policy consists of proprietary business information. *Id.*

The Ninth Circuit established standards governing requests to seal in *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180-81 (9th Cir. 2006). "A 'good cause' showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions." *Id.* at 1180 (citing *Foltz,* 331 F.3d at 1135). The same good cause showing applies to "discovery motion[s]

4

unrelated to the merits of a case." *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016). To meet the good cause standard, a party must make a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Nicolosi Distrib., Inc. v. Finishmaster, Inc.*, No. 18-CV-03587-BLF, 2018 WL 3932554, at *1 (N.D. Cal. Aug. 16, 2018) (citing *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002)). "'Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning' will not suffice." *Id.* (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)).

The court finds that Wellpath has not demonstrated good cause to seal the policy. Wellpath falls far short of making a particularized showing. It does not explain why disclosure of its policy would somehow cause Wellpath staff to be less willing to follow it. Additionally, Wellpath has no business interest in protecting the contents of the policy, as the information is already in the public record. Wellpath's Ventura County policy was publicly filed in *Hultman*, and its language is nearly identical to the Alameda County policy. [Docket No. 126-4.] The court denies the motion to seal and orders Plaintiff to refile the unsealed Alameda County policy **by September 5, 2024**.

## IV. EVIDENTIARY OBJECTIONS

"Courts carefully scrutinize the assertion of the PSQIA privilege and generally require factual assertions to be supported by evidence." *Hultman*, 2022 WL 2101723, at *5. Wellpath makes a factual assertion that the Part IIIs at issue in this motion are privileged PSWP. To determine if Wellpath has met its burden to establish privilege over the Part IIIs requested by Plaintiff, the court must first decide if it can consider Wellpath's evidence.

The only evidence offered by Wellpath are Samson's declaration and deposition testimony. Plaintiffs object to both as lacking personal knowledge. "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Samson's declaration makes the general statement that, by virtue of her position as "Director of CQI [Continuous Quality Improvement] and Quality Innovations," she is "qualified and knowledgeable to discuss the handling of the Part IIIs of inmates" at SRJ.

Samson Decl. ¶ 2. In her deposition, however, she clarified that she could only speak to Wellpath's general corporate policy and practice as of 2023, which is when she began working in her current position and when Wellpath last reviewed its policy. Samson Dep. 10; 47-48. The sole basis for her belief that the pre-2023 Part IIIs were not externally shared with Alameda County is what she learned in a 25-minute video conference with Wellpath employees Michael Durbin and Jen Diaz to prepare for her deposition. *Id.* at 21-23; 39-40; 61-62. In that meeting, Durbin and Diaz told Samson that they authored the Part IIIs for Christian Madrigal, Raymond Christopher Reyes, Jr., Christopher Crosby, Vinetta Martin, Marlon Reyes, and Nelson Chia *after* Wellpath had completed its Administrative Mortality Review for each death, and that they did not share any Part III information with Alameda County representatives during the Administrative Mortality Reviews. *Id.* at 53; 58; 65-66; 74.

Plaintiff argues that Durbin's and Diaz's statements are inadmissible hearsay, and therefore, Samson's testimony based on those statements fails to satisfy Wellpath's burden of proof. Wellpath responds that Federal Rules of Evidence 602 does not apply to deposition testimony in a motion to compel discovery, and that Samson can testify about facts without personal knowledge because she is an organizational representative. Defs. Supp. 2-3. Wellpath cites Federal Rules of Civil Procedure 30(b)(6), which governs depositions of organizations.

Contrary to Wellpath's assertions, Rule 602 does apply to testimony in the context of a motion to compel discovery. *See, e.g., Herriges v. Cnty. of Macomb*, No. CV 19-12193, 2020 WL 4726940 (E.D. Mich. Aug. 14, 2020) (finding deposition testimony inadequate for lack of personal knowledge under Rule 602 in a PSQIA discovery dispute). Rule 30(b)(6) allows an individual to testify on an organization's behalf when the organization is named as the deponent. However, Samson was not designated as a 30(b)(6) representative, and nowhere does Samson suggest that she is testifying on behalf of Wellpath. The court therefore reviews all of Samson's testimony—by declaration and through deposition—as having been provided in her individual capacity.

### A. Samson Declaration

Rule 602 requires that a declaration offered in support of a discovery motion must be based on personal knowledge. *See Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d

6

1084, 1089 (N.D. Cal. 2009) (applying Rule 602 to declarations submitted to prove privilege in a discovery dispute). "Personal knowledge includes opinions and inferences grounded in observations and experience." *Id.* (citing *United States v. Joy*, 192 F.3d 761, 767 (7th Cir. 1999)). It can be "inferred from a declarant's position within a company or business." *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007). It also can come from review of the contents of business records. *Herriges*, 2020 WL 4726940, at *7. But it cannot be based on mere "hearsay or suspicion." *Ivins v. Corr. Corp. of Am.*, 291 F.R.D. 517, 521 fn. 3 (D. Mont. 2013).

    Samson's declaration is worded to suggest that her personal knowledge comes from her work as Wellpath's Director of CQI and Quality Innovations. However, Plaintiffs point to inconsistencies that significantly erode an inference that Samson gained personal knowledge through working in her position. First, Samson admits that she is not competent to testify about Wellpath's policies before 2023 or the policies specific to SRJ. Samson Dep. 47 ("I can only speak to current policy and practice . . . [which] was last reviewed in . . . early 2023."); 48 ("I work out of the corporate office. So I don't specifically work individually with sites. So I can't speak to site-specific policies that I'm not familiar with."). Second, her declaration states that a Part III authored by Jennifer Roosa involving an inmate named Leonard Brown is PSWP. Samson Decl. ¶ 18. However, when asked about Leonard Brown in the deposition, Samson stated that she was not familiar with his case, did not read any documents about him, did not speak with Jennifer Roosa, and did not know if a Part III was even completed regarding Brown's death. Samsom Dep. 89. Third, the sole basis for Samson's belief that the Part IIIs before 2023 were not externally reported appears to be her single conversation with Diaz and Durbin, discussed above. Notably, this conversation did not occur until she was preparing for her deposition—*after* she signed her declaration under penalty of perjury. *Id.* at 21-23.

    In short, it appears that Samson had little if any personal knowledge about statements in her declaration regarding the Part IIIs prepared before 2023. It is also apparent that she did not review her own declaration carefully to confirm all facts stated in it. Given these significant issues with the declaration, the court affords it little evidentiary weight with respect to the pre-2023 Part IIIs.

### B. Samson Deposition

Samson's deposition testimony is similarly flawed. Wellpath appears to concede that Samson did not have personal knowledge of many facts stated in her deposition; it focuses instead on arguing that "imputed personal knowledge" is sufficient for corporate representatives—an argument without merit, as explained above. Defs. Supp. 3-4. Samson's testimony about what was or was not shared at the Administrative Mortality Reviews for the SRJ suicides before 2023 is based entirely on her taking Diaz and Durbin's hearsay at face value. Samson Dep. 62; 71-72. Testimony based on unsworn, inadmissible hearsay does not meet the requirements of Rule 602.

Plaintiffs provide other reasons to be concerned about the reliability of Samson's deposition testimony. Durbin's hearsay statements contradict Wellpath's privilege log. Durbin told Samson that he completed Park's Part III at some point after March 3, 2021, when the Administrative Mortality Review was held. Samson Dep. 58. However, the privilege log states that the Park Part III was prepared on February 22, 2021. [Docket No. 126-3 (Privilege Log).] Durbin's hearsay statements also demonstrate a lack of compliance with the Wellpath Policy, which requires the Part III to be completed at least three business days prior to the Administrative Mortality Review meeting. Wellpath Policy 4. Wellpath does not explain these contradictions.

In *Herriges*, the court found the declarant did not have personal knowledge of whether reports were submitted to a PSO because the declarant was not familiar with the reporting process and did not review business records; "he simply relied on 'his staff to do what they were supposed to do.'" *Herriges*, 2020 WL 4726940, at *7. Likewise, in this case, Samson had no personal knowledge of whether the Part IIIs prepared before 2023 were shared and discussed with Alameda County representatives at the Administrative Mortality Reviews; she simply relied on what two staff members told her in a single meeting after she submitted her sworn declaration.

In contrast, Samson's testimony regarding the sole Part III completed in 2023 by Lori Taunton (following the suicide of Stephen Lofton) is entitled to more weight. Samson has demonstrated personal knowledge regarding the Lofton Part III due to her position at Wellpath—she states that she has knowledge of Wellpath policies beginning in 2023, and that she directly manages Taunton and meets with her weekly. Samson Dep. 25; 47-48. Plaintiffs do not appear to challenge Samson's personal knowledge with respect to the Lofton Part III document.

8

### C. Bazzel Testimony

Plaintiffs separately argue that the court should consider the testimony of Dr. Judd Bazzel, a Wellpath employee who testified in *Hultman*. Plaintiffs argue that the Bazzel testimony, which was noticed as a 30(b)(6) deposition, is both a Wellpath party admission and a judicially-noticeable fact. [Docket No. 144 (Plfs. Supp. Reply) 2.] The court does not consider Bazzel's testimony or the court's findings of fact in *Hultman* because the evidence in *Hultman* was about Wellpath procedures in Ventura County, not in Alameda County.

## V. ANALYSIS

Wellpath has failed to meet its burden to establish that the Part IIIs at issue in this case that were prepared before 2023 are privileged PSWP. This case is not like *Nelms* or *Louzi*, the cases cited by Wellpath. Defs. Supp. 5. The court in *Nelms* found there was "no evidence" that the Part III was created for a dual purpose and relied on an affidavit from a Wellpath employee which "facially" established that the Part III was PSWP. *Nelms v. Wellpath*, LLC, 667 F. Supp. 3d 560, 567 (E.D. Mich. 2023). In *Louzi*, the court found there was "no objective reason to believe that the report was disclosed to any party other than the PSO" because, while the plaintiff speculated that the report may have been shared to the county, the plaintiff had no evidence that the county actually received the report at issue. *Louzi v. Fort Bend Cnty., Texas*, No. 4:18-CV-04821, 2021 WL 1751066, at *1 (S.D. Tex. May 3, 2021). Unlike *Nelms*, there is evidence in this case (the Wellpath Policy) that the Part IIIs were created for a dual purpose and were shared externally with Alameda County representatives. There are also material contradictions that call Samson's reliability into question when she asserts, without personal knowledge, that the pre-2023 Part IIIs are PSWP. And in contrast to *Louzi*, the procedures outlined in the Wellpath Policy create an objective reason to believe that the Part IIIs were shared with Alameda County, orally or otherwise, at the Administrative Mortality Reviews.

In sum, Wellpath fails to offer sufficient reliable evidence to meet its burden and to refute Plaintiffs' assertion that the pre-2023 Part IIIs had a dual purpose. However, Wellpath has offered credible evidence that Stephen Lofton's Part III, created after 2023, did not have a dual purpose.

Plaintiffs raise an alternative argument that Wellpath has not established privilege because it did not offer evidence that the Part IIIs were submitted to a PSO. Plfs. Supp. 5. For the Part IIIs

1  created before 2023, the court need not consider this argument because it has already determined
2  they are dual-purpose documents and thus are not privileged. For Stephen Lofton's Part III,
3  Samson states that she received email confirmation from the PSO (Center for Patient Safety) that
4  it was submitted. Samson Dep. at 74-77. Personal knowledge can come from the review of
5  business records. *Herriges*, 2020 WL 4726940, at \*7. Samson testified that she had personal
6  knowledge that Lofton's Part III was submitted to a PSO because she reviewed the email record.
7  Samson Dep. at 74-77. Plaintiffs give no reason to doubt Samson's testimony on this point.

## VI. CONCLUSION

For the foregoing reasons, the court grants Plaintiffs' motion to compel as to the Part IIIs created before 2023. The court denies Plaintiffs' motion to compel as to Lofton's Part III, which was completed in 2023 and submitted to a PSO. Wellpath shall produce the requested Part IIIs (except for Lofton's) **by September 5, 2024**.

**IT IS SO ORDERED.**

Dated: August 29, 2024



Donna M. Ryu
Chief Magistrate Judge